# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| KRISTAL CHRISTINE THOENE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner )<br>of Social Security, )<br>)<br>Defendant. ) | Case No. 4:15-cv-00489-NKL |

## ORDER

Plaintiff Kristal Christine Thoene appeals the Commissioner of Social Security's final decision denying her application for supplemental security income. The decision is affirmed.

### I. Background

Thoene was born in 1970. She alleges she became disabled beginning April 30, 2012.

#### A. Medical history, employment history, and self-report

Laura Voss, D.O., saw Thoene on May 30, 2012, and noted complaints of worsening headaches. Thoene's problems included atypical depressive disorder, internal derangement of the knee, and migraine headache. Thoene was an every day smoker. Thoene reported that her depression improved with a folic acid supplement, but her headaches were occurring "all over and daily," and she had knee pain. [Tr. 204.] Thoene said that on three occasions she had been able to control the pain with ibuprofen and her neighbor's OxyContin so she did not have to go to the emergency room. Dr. Voss noted some tenderness in Thoene's back with palpation, but the physical examination was otherwise normal, and Thoene had no neurological symptoms. She had no motor dysfunction, and had normal gait and stance. Dr. Voss ordered laboratory tests

and adjusted Thoene's medication. The doctor also recommended natural therapy for headaches, sleep hygiene, trigger avoidance, and dietary changes, and told Thoene it could take up to three months to see benefits from the medication.

In July 2012, Thoene spoke on the telephone with an agency representative in connection with filing her application for benefits in which she alleged an April 2012 onset of disability. The representative did not note any difficulties Thoene had with hearing, reading, breathing, understanding, coherency, concentration, talking, or answering. The representative noted there was nothing unusual about the interview. Thoene told the representative she had stopped working because of her condition on November 20, 2008. Thoene's work history included seven months as a cashier in 1995, six months in road construction between 1995 and 1996, and three months as a customer service contractor between 2007 and 2008. With the exception of 2000, during which Thoene made $338.05, Thoene had no earnings between 1997 and 2006. She made $688.25 in 2007 and $2,455.94 in 2008.

Thoene filled out a function report in September 2012. [Tr. 168-179.] She attached a typed narrative in which she described awakening with overwhelming sadness and sobbing uncontrollably. Thoene stated that it could take up to an hour and forty-five minutes to shower and described needing rest periods throughout the day. She took ibuprofen for her headaches and stated that at times she awoke with a migraine and found sights, sounds, and smells excruciating. She said she had difficulty with eyesight, nausea, and vomiting. Thoene had pets that she fed and watered. She said that she had to rest her hands while washing her hair, but did not describe any other difficulties with personal care. With the exception of glasses, she did not use assistive devices like braces or a splint. Thoene also made simple meals, did some dishes, and washed small loads of laundry. She went out alone, but did not drive or shop. Thoene maintained the ability to handle money. With respect to her ability to get along with others,

2

Thoene stated that she got irritated easily and noise made her irritable. She also said that her depression made her stay home and that her pain made her not want to be active. She believed that she could follow a recipe if she could refer to it repeatedly and stated that she could stand for no more than 15 minutes, could lift no more than 10 pounds, and had difficulty reaching overhead. Thoene was able to play games, do puzzles, or use a computer for 30 minutes at a time.

On September 19, 2012, Thoene saw Dr. Voss with "new" complaints of bilateral hand pain. [Tr. 201.] Physical examination revealed positive trigger points at the occipital muscle, supraspinatus muscle, trapezius muscle, and anterior lower cervical region. Phalen's sign was positive and Tinnel's sign was positive in the right and negative on the left. Dr. Voss assessed Thoene with fibromyalgia and carpal tunnel syndrome, provided sample medication, and advised Thoene to wear splints at night.

Thoene next saw Dr. Voss on November 2, 2012, complaining of daily headaches. Under review of systems, the doctor recorded, "No vision problems and no eye pain. No photophobia." [Tr. 225.] Examination showed Thoene's eyes, speech, thought process, thought content, and cognition were normal. The doctor's assessment was migraine headache, and myalgia and myositis. The doctor prescribed Oxycontin, Topomax, and propranolol, and instructed her to return to the clinic if symptoms worsened or new ones arose, and to return for a recheck in one month.

Thoene saw Dr. Voss again on June 5, 2013, for medication follow-up. She reported her headaches had worsened and she had increased stress at home because her partner had a hip replacement and her grandchildren had moved in. Dr. Voss noted Thoene was not in acute distress, but had multiple tender points on her back. The doctor's assessment was migraine headache and atypical depressive disorder. The doctor ordered labs in two weeks, but did not

3

note any instructions for follow-up or a return visit.

The next time Thoene saw Dr. Voss, on August 1, 2013, she reported daily headaches and severe headaches four times per month, but stated she was still taking Topomax and propranolol, which helped. She had run out of Cymbalta for depression and was feeling worse, but was "eager" to start taking it again. [Tr. 218.] Under history, Dr. Voss noted "psychological symptoms[,] depression fairly well controlled[.]" [*Id*.] Thoene had no neurological symptoms, and her neurological examination was normal. [Tr. 218-19.] Dr. Voss renewed Thoene's prescriptions and instructed her to return in three months.

### B. Opinion evidence

On October 30, 2012, Kenneth Bowles, Ph.D., agency psychologist, performed a records review and concluded that Thoene's allegations of limitations appeared to be more limiting than the medical record suggested. [Tr. 54-55.] He concluded she had moderate limitations in interacting appropriately with the general public and was moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The ALJ gave Dr. Bowles' opinion little weight. [Tr. 17.]

On October 24, 2013, Dr. Voss prepared a Medical Source Statement—Mental on which she checked boxes indicating that Thoene was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, and the ability to work in coordination with or proximity to others without being distracted by them. Dr. Voss checked a box indicating Thoene had marked limitations in her ability to complete a normal workday or workweek without interruption form psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. She noted no significant limitations in any area of social interaction or adaptability. [Tr. 228-29.]

4

Dr. Voss also completed an assessment of Thoene's physical symptoms the same day. On that form, she checked boxes indicating that Thoene could lift less than five pounds frequently, walk one hour throughout the workday, stand or walk one hour, and sit for two hours. Dr. Voss opined that Thoene's ability to push and pull was limited due to pain and that she should never climb, balance, stoop, kneel, crouch, crawl, reach, or handle, but could occasionally finger and feel. She indicated Thoene could see, speak, and hear frequently. Dr. Voss opined that Thoene should avoid all exposure to environmental factors, and would need to lie down for three to four hours during the workday. [Tr. 231-32.] The ALJ gave Dr. Voss' opinions little weight. [Tr. 17.]

C. **Hearing testimony**

At the administrative hearing of November 6, 2013, Thoene testified that she last worked in 2006 or 2007. She stated she had few earnings after 1997 because she was married at that time and her husband made quite a bit of money. She was no longer married at the time of the hearing.

Thoene stated she had had severe headaches since age 13 and they prevented her from working. She reported that she had a headache every day of her life and they had gotten worse four years earlier. A typical daily headache, she said, rated at four or five on a ten-point scale and migraines were typically an eight. If a migraine reached a 10, Thoene said, she "is … usually passed out with it." [Tr. 30.] She stated that a migraine typically lasted for two to three days. Triggers included certain smells, lights, and sounds. Thoene testified she could not stop a migraine with medication and that nausea, blurred vision, and balance disturbance accompanied the migraines.

Thoene stated that she also had a bad knee and back pain due to a car accident when she was 13 years old. She said that standing, sitting, and carrying things made her knee pain worse

5

and she could not bend over to pick things up.  Thoene testified that she had fibromyalgia and experienced pain in her neck, back, hands, and arms.  When asked whether there was any activity that made her pain worse, Thoene stated, "I don't know. I guess, yeah, I guess, you know, like to vacuum or something hurts, or to pick up something like the grandkids or something."  [Tr. 33.]  She said she had recently started taking a new medication for fibromyalgia that seemed to be working and she was now able to stretch.   Dr. Voss is the only doctor she is seeing.

Thoene said she slept for two to three hours during the day, every day, and sleeps eight to twelve hours a night.  She testified that she also had trouble with short-term memory and that she forgot what she was doing and forgot what she watched on television.  Thoene believed she could write a letter and said she "sometimes" had trouble buttoning buttons.  [Tr. 36.]  She stated that she dropped things like coffee cups and spatulas.  Her doctor never mentioned carpal tunnel syndrome to Thoene.  Thoene testified that her headaches affected her mood and made her want to be alone.   Thoene testified that, as far as she knew, she had post-traumatic stress syndrome and was taking Deplin for it.

She lived in a mobile home with a friend and stated that she tried to do chores, but had some trouble standing so it took her all day to do dishes.  She said she had problems washing her hair and had to stop and rest.  She said that during the day, she watched television, cried, and slept.

Thoene further testified that she had been working on a degree in criminal justice for about four years, but was dismissed from the program because she was not able to complete her requirements in the allotted time.  She also stated she had to stop going to school because of finances.  Thoene testified that her headaches had become very bad four years ago.  And she testified that she went back to school one year ago but stopped because of headaches.

A vocational expert considered an individual of Thoene's age, education, and experience,

6

who could perform the full range of sedentary work and could stand or walk no more than 15 minutes at any one time. The individual could not push or pull levers with her upper extremities bilaterally. She could not reach above her head and was limited to occasional bending, twisting, and turning whether seated or standing. The individual could not crawl, kneel, or climb ladders, ropes or scaffolds, but could occasionally stoop, squat, crouch, or climb stairs. She could grasp, grip, handle, finger, and feel frequently and could frequently perform wrist movements. The individual could not use air tools, vibrating tools, or motor vehicles and could not work at unprotected heights. She could have no more than occasional contact with coworkers and supervisors and could not respond to usual work situations in a routine work setting that involved complex instructions or tasks. The VE testified that such an individual could perform representative jobs including table worker or sealer[1], and that such jobs exist in significant numbers in the national economy.

### D. The decision

The ALJ found Thoene had severe impairments of fibromyalgia syndrome, depression, neck pain, back pain, knee pain with internal derangement, migraine headaches, constipation, bilateral hand pain, and PTSD per testimony. The ALJ concluded Thoene's impairments do not meet any Listings under the Social Security criteria, and Thoene does not claim to meet any.

The ALJ found Thoene retained the RFC to:

> [P]erform sedentary work as defined in 20 CFR 416.967(a) except she can stand or walk no more than 15 minutes at any one time. She cannot push or pull levers or foot pedals with her lower extremities bilaterally. She cannot push or pull levers with her upper extremities bilaterally. She cannot reach above her head. She can occasionally bend, twist, and turn whether seated or standing. She cannot crawl, kneel, or climb ladders, ropes, or scaffolds. She can occasionally stoop, squat, crouch, and climb stairs. She can

---

[1] The VE initially testified that Thoene could perform the job of general assembler, but subsequently testified that the job requires constant handling and fingering, so did not meet the requirements of the hypothetical the ALJ posed. [Tr. 47.]

7

> frequently grip, grasp, handle, finger and feel. She cannot use air or vibrating tools or motor vehicles and cannot work at unprotected heights. She cannot have contact with the public and no more than occasional contact with coworkers and supervisors. She cannot respond to usual work situations in a routine work setting that involve complex instructions or tasks.

[Tr. 13-14.] The ALJ concluded Thoene's subjective complaints were not credible.

The ALJ further concluded that Thoene retained the ability to perform jobs such as table worker or sealer,[2] and is not disabled.

## II.   Discussion

Thoene argues that the decision must be set aside because the RFC was not properly formulated. Specifically, Thoene argues that the ALJ failed to properly consider her testimony and perform the credibility analysis; account for specific limitations relating to Thoene's migraines and depression; or properly support the conclusions reached.

The Commissioner's findings are reversed "only if they are not supported by substantial evidence or result from an error of law." *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012.] Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support the Commissioner's conclusions. *See Juszczyk v. Astrue,* 542 F.3d 626, 631 (8th Cir. 2008.] "If substantial evidence supports the Commissioner's conclusions, [the Court] does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Byers*, 687 at 915.

### A.   Substantial evidence on the whole record supports the ALJ's assessment of Thoene's credibility

Thoene argues that in discounting her credibility, the ALJ relied on the lack of objective evidence supporting her reports, her limited treatments and almost no treatment for headaches,

---

[2] The ALJ inadvertently included the job of general assembler in the list of jobs at Step 5 of the decision. Because two other jobs, existing in significant numbers in the national economy were also identified, the error is harmless and Thoene does not challenge it.

8

and poor work history, but failed to consider Thoene's subjective complaints of pain and self-reports of her daily activities.

Credibility questions concerning a claimant's subjective testimony are "primarily for the ALJ to decide, not the courts." *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009) (*quoting Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001).] As discussed below, the ALJ gave good reasons for discrediting Thoene's credibility, and the credibility determination is supported by substantial evidence on the whole record. *See Halverson*, *v. Astrue*, 600 F.3d 922, 931-33 (8th Cir. 2010) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination.") (internal quotation and citation omitted.]

Pain and other subjective complaints are evaluated by considering several factors: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Moore v. Astrue,* 572 F.3d 520, 524 (8th Cir. 2009) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984)). The ALJ applied the *Polaski* factors.

As the ALJ noted, the record reflects that during the period of alleged disability, Thoene had routine medical appointments with her primary care physician. The appointments ranged from two to seven months apart from May 2012 to August 2013. Thoene was not referred to specialists; and her treatment has not been aggressive. Despite Thoene's descriptions of completely impaired mental and physical functioning including crippling headaches with photophobia, her five appointments with Dr. Voss revealed normal neurological function, normal gait, normal thought content, and normal cognition. Dr. Voss never noted photophobia. While

9

she testified that she had crying spells regularly, Thoene did not report that symptom to Dr. Voss, nor did the doctor ever note Thoene was tearful or in distress at any appointment. Rather, Thoene reported to Dr. Voss that her depression improved after taking a dietary supplement and that medication helped control her headaches. She reported feeling worse after she ran out of Cymbalta and was eager to start taking it again. And although Thoene filled out her function report in September 2012, describing severe symptoms of depression, fatigue, and headache, when she saw Dr. Voss one week later, Dr. Voss' records do not reflect that she reported such severe symptoms to him nor that he observed them. Thoene also testified that her new fibromyalgia medication was working and that she could stretch again. Not only does this evidence indicate Thoene's symptoms were treatable with medication, it also indicates her symptoms were milder than she now claims. Mild symptoms that are controllable with medication do not support a finding of disability. *See Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003).

The lack of emergency room visits; referrals to pain management, mental health, or other specialists; or more frequent appointments with her primary care physician further indicate Thoene's impairments do not affect her to the extent she now claims. If Thoene was unable to do anything other than cry, sleep, and watch television as she testified, she presumably would have relayed the information to her doctor for treatment, sought more frequent treatment, or sought treatment from or been referred to specialists.

Thoene's daily activities of feeding and watering pets, making simple meals, doing some dishes, washing small loads of laundry, doing games or working on the computer for 30 minutes at a time, and her ability to handle money also support the ALJ's finding of lack of credibility.

Thoene's work history also detracts from her credibility. She testified that she had no work history during her married years, 1997 to about 2007, because her husband made quite a bit

of money. She earned about $680 in 2007 and $2,400 in 2008, and nothing after that, notwithstanding an alleged onset date of April 30, 2012. Furthermore, although Thoene testified that she has had symptoms since she was 13 years old, she worked as a cashier and in road construction before she was married, and was able to work on a college degree for four years. Such poor or sporadic work history calls into question motivation to apply for benefits, and discounts credibility. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) ("[a] lack of work history may indicate a lack of motivation to work rather than a lack of ability"); *see also Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (claimant not credible due in part to a sporadic work record and low or no earnings).

In support of her allegations, Thoene points to medical records of five visits—pertaining to complaints of headache and depression among other symptoms—that she had with providers other than Dr. Voss from September 2008 through August 2010, and a psychological evaluation she had in October 2010 [Doc. 9, pp. 2-3], all well before her alleged onset date of April 30, 2012. The ALJ concluded the records were not relevant. [Tr. 11.][3] The records pertain to a previously adjudicated claim, which was denied in October 2010. [Tr. 53.] Thoene did not appeal, so that determination is final and binding. 20 C.F.R. §§ 404.987(a) and 416.1487(a).

Nonetheless, evidence from "a prior administrative claim may be relevant to a claim of disability with a later onset date." *Burks-Marshall v. Shalala,* 7 F.3d 346, 347 n.2 (8th Cir. 1997); *see also Tate v. Apfel,* 167 F.3d 1191, 1194 (8th Cir. 1999) (approving ALJ's consideration of all relevant medical evidence, regardless of date). And here, although the ALJ concluded the records were not relevant, they in fact support the ALJ's conclusion regarding Thoene's credibility. For example, the psychologist who evaluated Thoene in October 2010 stated that Thoene could understand and remember simple and even moderately complex

---

[3] The ALJ did explicitly accept Thoene's statement that she had chronic headaches. [Tr. 11.]

11

Case 4:15-cv-00489-NKL   Document 12   Filed 02/17/16   Page 11 of 15

instructions, she could sustain concentration and persistence in simple tasks when motivated, and she was able to interact socially and adapt to her environment. [Tr. 274.] Summarizing his opinion, the psychologist stated that Thoene's problems appeared to be "at the moderately impaired range and non-severe[.]" [*Id.*]

The prior records also reflect large gaps between Thoene's doctor visits, including a one-year gap and a five-month gap, and then a 20-month gap between her August 2010 doctor visit and the next one she had in May 2012 (after the alleged onset date). The infrequency of the medical treatment to which she points detracts from her credibility because it is inconsistent with her allegations of disabling symptoms. *See Kamann v. Colvin,* 721 F.3d 945, 950-51 (8th Cir. 2013) (ALJ properly considered that claimant was seen relatively infrequently for his impairments, despite his allegations of disabling symptoms"); *Casey v. Astrue,* 503 F.3d 687, 693 (8th Cir. 2007) (claimant sought treatment "far less frequently than one would expect based on the pain that [he] alleges").

Given the totality of the evidence, the ALJ's assessment of Thoene's credibility is supported by substantial evidence on the whole record.

### B.    The RFC determination

Thoene argues that the RFC does not account for her limitations and that the ALJ failed to cite evidence, including medical evidence, to support the specific limitations provided in the RFC.

An ALJ must formulate the RFC based on all of the relevant, credible evidence of record. *See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.") (*quoting Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).] The RFC determination must be supported by substantial evidence, including at least some medical

evidence. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000.] Evidence relevant to the RFC determination includes medical records, observations of treating physicians and others, and a claimant's own description of her limitations. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000) (citation omitted.]  But an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (internal quotation and citation omitted).  The claimant has the burden to prove his or her RFC. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005.] Here, substantial evidence supports the RFC determination.

The ALJ found Thoene could perform sedentary work as defined in 20 C.F.R. § 416.967(a), which includes lifting no more than 10 pounds and standing and walking for no more than 15 minutes at a time. Support for this limitation comes directly from Thoene's function report and from Dr. Voss' opinion.

Next, the ALJ determined Thoene could not push or pull levers or foot pedals with her lower extremities bilaterally. Thoene testified that the residual effects of a car accident included back and knee pain. Dr. Voss diagnosed Thoene with internal derangement of the knee, fibromyalgia, and opined that pushing and pulling should be limited. The limitation of use of the lower extremity accounts for these impairments.

Next, the ALJ determined Thoene could not reach above her head, which is supported by Thoene's indication in the function report that she was not able to reach. The determination that Thoene could bend, twist, and turn whether seated or standing, and only occasionally, is consistent with Thoene's claims that her fibromyalgia caused pain all over and that she had recently been able to stretch again. She also specifically testified that she had difficulty bending to pick things up, and this limitation accounts for that difficulty.

The ALJ determined Thoene could not crawl, kneel, or climb ladders ropes or scaffolds,

which accounts both for her fibromyalgia and the pain in her knees. She could stoop, squat, crouch, and climb stairs only occasionally, which accounts for difficulties bending, pain in the knees, and pain associated with fibromyalgia.

The ALJ next found Thoene could frequently grip, grasp, handle, finger, and feel. Thoene's testimony that she was able to perform personal care tasks and had problems only "sometimes" supports the limitation to frequent hand use. Also, Thoene stated that she sometimes had problems with her arms and back while grooming, not that she had difficulty with her hands. She also stated that she could do dishes, but reported difficulty standing, which is consistent with frequent use of the hands.

The ALJ found Thoene could not use air or vibrating tools or motor vehicles and could not work at unprotected heights. This limitation reduces exposure to migraine triggers, and promotes Thoene's safety if she has a migraine while working.

Finally, the ALJ accounted for Thoene's mental limitations and migraines in concluding she could not have contact with the public and could have no more than occasional contact with coworkers and supervisors. This limitation is based on Thoene's representation that she became irritable around people. Thoene also testified that she could not keep up with her schoolwork, which the ALJ found was evidence of some limitation in concentration, persistence, or pace. The ALJ further concluded that Thoene could not respond to usual work situations in a routine work setting that involve complex instructions or tasks. This limitation ensures a level of simplicity that accounts for Thoene's self-described PTSD and is consistent with the moderate mental limitations Dr. Voss found.

Thoene points to the record from the prior determination. As discussed above, those records support the ALJ's conclusion concerning credibility. The records also support the RFC. For example, in March 2010, Thoene told a psychologist about problems with headache and

14

depression, among other symptoms. The psychologist's assessment indicated difficulties with short-and long-term memory, and concentration and focus. [Tr. 259.] In October 2010, Dr. Forsyth opined that Thoene could understand and remember simple and moderately complex instructions, and sustain concentration and persistence in simple tasks. [Tr. 274.] The ALJ accounted for limitations resulting from migraines and mental limitations in the RFC.

Thoene also argues that having discounted Dr. Voss' opinion, the "ALJ did not have any specific evidence to support the limitations contained in the RFC." [Doc. 9, p. 18.] As discussed above, the RFC determination was based on substantial evidence on the record as a whole, including medical evidence. The ALJ properly limited the RFC determination "to only the impairments and limitations he found to be credible based on his evaluation of the entire record." *See McGeorge v. Barnhart*, 321 F.3d 766, 769 (8th Cir. 2003.] And the ALJ was not "required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" in formulating the RFC. *Martise*, 641 F.3d at 927. Thoene simply failed to bear her burden to prove disability and demonstrate a more limited RFC. *Goff,* 421 F.3d at 790.

Substantial evidence on the whole record supports the ALJ's conclusion that Thoene was not disabled.

### III. Conclusion

The Commissioner's decision is affirmed.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated:  February 17, 2016  
Jefferson City, Missouri